**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID D. & GLADYS M. VICKS,**

                           **Plaintiffs,**

-against-                                                        **05-CV-284**

**UNITED STATES,**

                           **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.  INTRODUCTION**

    Plaintiffs David D. Vicks and Gladys M. Vicks bring this action pursuant to 26 U.S.C. § 7422 claiming an entitlement to a $3,602 tax refund from the 2000 tax year. See Compl. ¶¶ 1-6, 12.  The issue in dispute is whether Plaintiff David D. Vicks ("Vicks"), formerly employed as a firefighter with the City of Binghamton Fire Department, was paid taxable wages and other employment benefits during 2000, or whether he was receiving non-taxable benefits pursuant to New York General Municipal Law § 207-a.  The United States ("Defendant") has moved for summary judgment arguing that Plaintiffs are not entitled to the requested refund because, although Vicks received Section 207-a benefits in years previous to 2000, in 2000 he was paid taxable salary or wages.  Plaintiffs have opposed Defendant's motion and have cross-moved for summary judgment.  Plaintiffs

argue that once the City of Binghamton awarded Vicks Section 207-a benefits, the benefits could not be revoked absent a revocation hearing. Plaintiffs further argue that because no revocation hearing took place before 2003, Vicks's compensation during 2000 was non-taxable and, therefore, they are entitled to the sought-after refund as a matter of law. For the reasons discussed below, both motions are **DENIED.**

## II. FACTS

Based on the parties' Local Rule 7.1(a)(3) statements and responses, a number of relevant facts are undisputed. These undisputed facts are set forth without citation to the record. Where a genuine question of material fact exists, the Court sets forth the parties' positions on that fact and a citation to the record.

On September 3, 1995, David Vicks was injured in the line of duty while working as firefighter for the City of Binghamton Fire Department. As a result of his injuries, Vicks was out of work from September 3, 1995 until January 17, 1996. On January 17, 1996, Vicks returned to work for the Binghamton Fire Department in a light duty capacity. On February 6, 1996, the Office of the Comptroller of the City of Binghamton concluded that Vicks was "entitled to the full amount of his regular salary or wages pursuant to Section 207-a of the General Municipal Law of the State of New York from November 24, 1995 until his disability ceased on January 17, 1996." Feb. 6, 1996 ltr, Ex. A to Vicks Aff.

Vicks continued to work in a light duty capacity, although on an intermittent basis, until August 11, 1999. Vicks's medical provider took him out of work at least 17 times between January 1996 and August 11, 1999. Plaintiffs contend that the injury causing him to miss work these 17 times was "the injury sustained in 1995." Plt. L.R. 7.1 Stat. ¶ 26.

Defendant responds that this fact is irrelevant but "[a]dmits that for intermittent periods prior to August 1999, David Vicks received benefits pursuant to New York General Municipal Law Section 207-a arising out of an accident that occurred in 1995." Def. Resp. to Pltf. L.R. 7.1 Stat., ¶ 26.  Defendant's response appears to admit that Vicks received Section 207-a benefits during his absences from work between January 1996 and August 11, 1996.

Assuming that Vicks did receive Section 207-a benefits at some point after he started light duty work in January 1996, it is unclear, and disputed, whether he re-applied for these benefits.[1]  There is a document attached to the Complaint, however, that sheds some light on this issue. This document, entitled "Stipulation and Settlement of Claim Pursuant to General Municipal Law §207-A," is an agreement entered into by Vicks, his attorneys, and the City of Binghamton Corporation Counsel on May 1, 1998.  Because the payment, or non-payment, of Section 207-a benefits after August 1996 is central to a resolution of the pending motions, and because the May 1, 1998 agreement appears to address the issue of whether, and under what conditions, Section 207-a benefits were paid to Vicks after August 1996, the Court will examine the agreement although not referenced in the parties' Local Rule 7.1 Statements.[2]

---

[1] As noted above, Plaintiffs contend that although Vicks returned to light duty work in January 1996, his Section 207-a benefits continued unabated until 2003.

[2] Had it not been for the ambiguity surrounding the payment of Section 207-a benefits after January 1996, the Court would have limited its factual inquiry to the Local Rules Statements. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Local Rules require *the parties* "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out." )(internal quotation marks

(continued...)

The May 1, 1998 agreement provides that "[t]he City of Binghamton agrees to grant Mr. Vicks full benefits pursuant to General Municipal Law Section 207-A from the prior date of termination on March 4, 1997 until the date of his retirement." 5/1/98 Stip. (Compl. Ex. D), ¶ 2.[3] The agreement further provides that "there is no modified duty available for Mr. Vicks based upon his unique disability and restrictions," id. ¶ 3, and that the City of Binghamton will not contest Vicks's claim for New York State Workers' Compensation benefits. Id. ¶ 4. In addition, the agreement requires that Vicks apply for "Accidental and Performance of Duty Disability Retirements with the New York State Retirement System within twenty (20) days of the date of [the] agreement . . . [and] if such application is rejected, Mr. Vicks shall file for service retirement within twenty (20) days of any such rejection . . . ." Id. ¶ 6. Paragraph 8 of the agreement provides:

> Mr. Vicks agrees to withdraw any further claim for benefits pursuant to General Municipal Law §207-A after his retirement and Mr. Vicks further agrees that if he fails to file for [retirement as set forth in ¶ 6] the City of Binghamton may discontinue his General Municipal Law § 207-A benefits without further recourse by Mr. Vicks whether by grievance, arbitration, Article 78 proceeding and/or litigation by him or anyone on his behalf.

Id. ¶ 8.

Inasmuch as Plaintiffs have admitted that "[t]hroughout the 2000 calendar year, David Vicks was employed as a City of Binghamton, New York Fire Fighter," Def. L.R. 7.1

---

[2](...continued)
and citations omitted).

[3] It is unclear what was terminated on March 4, 1997. The agreement provides that "[t]he City of Binghamton agrees to restore all accrued sick time and vacation time which was charged between March 4, 1997 and his return to work." Id. ¶ 5. It is possible that the "termination" refers to Vicks' termination from employment that was later rescinded. It is also possible that the Section 207-a benefits were terminated on March 4, 1997. Either way, it is irrelevant to the instant determination because it appears that, from the date of the agreement forward, the City of Binghamton agreed to award Section 207-a benefits under the conditions set forth in that agreement.

Stat. ¶ 1; see Vicks Aff. ¶ 9 ("Even though I did not work, I received my full compensation during 2000 from the City of Binghamton), it appears that Vicks did not retire as required by the May 1, 1998 agreement. Further, Defendant has submitted evidence indicating that on July 15, 2003, after Vicks, his attorney, and the City of Binghamton entered another settlement agreement (i.e. "Global Settlement Agreement," discussed below), Vicks resigned from the Fire Department. Thus, when addressing Plaintiffs' cross-motion (and thereby viewing the evidence in the light most favorable to Defendant), a reasonable inference could be drawn that Section 207-a benefits, while perhaps re-awarded after 1996, terminated sometime thereafter by operation of paragraph 8 of this agreement because Vicks did not pursue retirement.[4]

On August 11, 1999, Vicks stopped physically attending work for the Binghamton Fire Department and subsequently filed for Workers' Compensation benefits. On March 6, 2000, the New York Workers' Compensation Board awarded Vicks $3,336.20 for the period from September 1, 1999 through February 29, 2000.  On January 19, 2001, the New York Workers' Compensation Board awarded Vicks $11,741.35 for the period from February 29, 2000 through January 11, 2001.  The Workers' Compensation Board determined in both awards that Vicks's inability to work during the stated periods was causally related to his 1995 injury.  However, because the New York courts have held that a Workers' Compensation Board determination has no legal effect on a Section 207-a

---

[4] The Court recognizes that the final paragraph of the May 1, 1998 agreement provides that "[t]his agreement shall be contingent upon acceptance by the International Association of Firefighters, Local 729, " id. ¶ 9, and the possibility exists that Local 729 rejected the agreement.  However, the Court also notes that the agreement was provided by Plaintiffs' counsel to the Internal Revenue Service as an attachment to a letter date May 19, 2004 in order to establish that benefits were paid pursuant to Section 207-a, and was attached to the Complaint.  Because the Plaintiffs have affirmatively relied on the May 1, 1998 agreement, the Court presumes that all contingent conditions have been fulfilled.

5

determination (see Discussion, *infra*), the pertinent question on these motions is determining Vicks's payment status during 2000.

As indicated above, Plaintiffs have admitted that throughout 2000 Vicks was employed as a City of Binghamton firefighter. While this admission does not rule out the possibility that Vicks was receiving Section 207-a benefits for 2000, there is other evidence indicating that he was not. Defendant has supplied a declaration from a City of Binghamton employee familiar with the Fire Department's practices concerning recording attendance of firefighters. See Rizzi April 26, 2006 Decl. ¶¶ 5-6. According to this employee, the Fire Department records firefighters' work attendance, including sick days, in an Attendance Book. Id. Firefighters who are receiving Section 207-a benefits are not listed in the Attendance Book. Id. For 2000, the Attendance Book indicates that Vicks was absent and took ordinary sick leave for the entire year. Id. and attach.

In addition, Vicks received a Form W-2 for 2000 indicating that he received $41,854.47 in wages, tips, or other compensation from the City of Binghamton, and that the City of Binghamton withheld $5,204.56 in federal income tax from these wages. While Vicks asserts that the W-2 was improperly calculated, he filed two federal income tax returns (an original and amended return) before he asserted that he was paid under Section 207-a in 2000.[5] Thus, it was not until Plaintiffs filed their second amended tax return in November 2003 that they first asserted that Vicks's 2000 wages were paid

---

[5] The Vicks filed a joint income tax return, Form 1040, for the 2000 tax period, reporting $41,854 in "wages, salaries, tips, etc." Def. L.R. 7.1 Stat. ¶ 5. In November 2001, the Vicks filed an amended return with respect to the 2000 income tax period seeking a refund of $1,626.00 on the basis that $11,379.00 of the $41,854.00 in wage income reported on his return had become non-taxable as a result of a decision of the NYS Workers' Compensation Board. Id. ¶ 8. In November 2003, the Vicks filed a second amended income tax return claiming that "David D. Vicks reported $35,414 in wage income on [the] original return. Pursuant to New York General Municipal Law 207-a, IRC 104(a)(1), and New York Worker's Compensation Law, this income is non-taxable." Id. ¶ 21.

6

pursuant to Section 207-a. A fact finder could reasonably conclude that the failure to identify Vicks's wages as Section 207-a exempt wages in his first two 2000 federal income tax returns is some evidence that he did not believe, at least until 2003, that he was being paid Section 207-a benefits in 2000.[6]

In 2003, between the filing of the second (first amended) and third (second amended) 2000 income tax return, a hearing was commenced to determine Vicks's entitlement to Section 207-a benefits. The current record provides little detail as to the facts leading up to this hearing, and the parties dispute whether Vicks or the City of Binghamton requested the hearing.  Plaintiffs contend simply that "the City of Binghamton requested a pre-termination hearing with regard to [Vicks's] General Municipal Law § 207-a benefits." Vicks Aff. ¶ 12.  Other than this assertion, however, Plaintiffs provide no evidence that the City of Binghamton requested the hearing or that Section 207-a benefits were being paid before the hearing.

In opposition, Defendant offers a "Global Settlement Contract" entered into in July 2003 by Vicks and the City of Binghamton. As discussed below, this agreement resolved "all claims" then existing between Vicks and City of Binghamton "including but not limited to the Workers' Compensation claim, General Municipal Law Section 207-a claim and any and all claims arising out of [Vick's] employment." Def. L.R. 7.1 Stat.¶ 13 (quoting Global Settlement Contract at p. 1).  The precatory paragraphs to the agreements in the Global Settlement Contract paint a decidedly different picture of the events leading up to the

---

[6] The Vicks's first amended 2000 income tax return, see Def. Ex. F, was prepared by the same law firm that represented Vicks in the May 1, 1998 Stipulation and Settlement of Claim; that represented Vicks in the July 2003 Global Settlement Contract; and that represents Plaintiffs in the current action.

7

hearing and eventual agreement.

In this regard, these precatory paragraphs indicate, *inter alia*: (a) that Section 207-a benefits were paid to Vicks "for intermittent periods of time up to, and including, August 11, 1999;" (b) Vicks "filed a claim for both Workers' Compensation and Section 207-a benefits" based on his September 3, 1995 injury, "and for benefits resulting from subsequent recurrences;" (c) Vicks was "working a modified duty position until August 11, 1999, at which time he alleged a medical inability to continue to work . . . and has not returned to work . . ."; (d) Vicks "has applied for [Section 207-a] benefits for the period of time that he has been out of work commencing on August 11, 1999, and continuing through the date of this agreement;" (e) "the [City of Binghamton] has denied [Vicks's] request for [Section 207-a] benefits after August 11, 1999;" (f) Vicks "did duly appeal the denial of benefits and timely requested a hearing;" and (g) "the parties, after a partial hearing entered into negotiations in an attempt to resolve the global issues between the parties . . . ." Global Settlement Contract, p. 1. While Plaintiffs have not admitted the accuracy of these precatory paragraphs, Plaintiffs have admitted the accuracy of the agreements contained in the document. See Plf. Resp. to Def. L.R. 7.1 Stat., ¶ 13 ("Affirmatively state, the document speaks for itself."); ¶ 14 ("The contract speaks for itself."); see also id. at ¶¶ 15 -18 (admitting certain terms of the contract). Under these circumstances, the Court finds that the precatory language in the Global Settlement Contract is sufficiently reliable to provide some indication of what the evidence might show if the matter were to proceed to trial.

Through the Global Settlement Contract, signed in July 2003, the City of Binghamton agreed to pay Vicks $115,000 as "full and final compensation of any of

8

[Vicks's] alleged claims" and was intended to be "complete and final satisfaction of all past, present and future claims [Vicks] may have pursuant to his claim with the State of New York Workers' Compensation Board, and more particularly, his claim for benefits pursuant to [N.Y. Gen. Mun. L. §] 207-a arising from his employment with [the City of Binghamton]." Global Settlement Contract ¶ 12. The Contract did not specify what form the $115,000 would take (*i.e.* whether it would take the form of Section 207-a benefits or something else). Id. at ¶¶ 13-14, 17, 19.

Following entry of the Global Settlement Contract, Plaintiffs filed their second amended federal income tax return seeking a refund based upon the position that Vicks's income for 2000 was non-taxable Section 207-a benefits. The Internal Revenue Service denied this request for a refund and Plaintiffs appealed that denial. The appeal was likewise denied, and this action followed.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering cross-motions for summary judgment, a court "'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002)(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district

9

court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc., 996 F.2d at 1461.

## IV.   DISCUSSION

### a.   Tax Refund Cases / Taxable Income

"In a tax refund suit, the burden of proof is on the taxpayer to prove an overpayment of tax, and the amount he is entitled to recover." Heublein, Inc., 996 F.2d at 1461 (citations omitted).  Plaintiffs assert that they overpaid their federal income taxes in 2000 because they paid taxes on all money Vicks received from the City of Binghamton even though a portion of that money was in the form of non-taxable benefits paid pursuant to N.Y. General Municipal Law § 207-a ("Section 207-a benefits").  Income received in the form of workers' compensation benefits is not included in an individual's gross income, and is, therefore, not taxable. 26 U.S.C. § 104(a)(1).  The parties appear to agree that Section 207-a benefits are in the nature of workers' compensation, and are, therefore, non- taxable. See Pl Mem. L. at p. 5; Def. Mem. L. at p. 3.[7]

There is no dispute that in 2000, Vicks received payment in some form from the City of Binghamton. Defendant asserts, however, that except for the money paid under the New York Workers' Compensation Act, Vicks was paid taxable wages or salary from the City of Binghamton in 2000 - not Section 207-a benefits. Plaintiffs take the opposite position.  Accordingly, the question before the Court on both motions is whether, in 2000, Vicks was paid non-taxable Section 207-a benefits by the City of Binghamton, or whether he was paid taxable wage income.

---

[7]The Court expresses no opinion on whether General Municipal Law § 207-a benefits are taxable.

10

### b.  Plaintiffs' Motion

The Court will start by addressing Plaintiffs' motion for summary judgment.  In support of their argument that Vicks was paid Section 207-a benefits from the City of Binghamton in 2000, Plaintiffs proceed upon two legal assertions.  First, they assert that "General Municipal Law § 207-a benefits cannot be revoked or discontinued until the employer (the City) holds a hearing and a determination is made to terminate benefits." Pl. Mem. L. p. 2; see also id. at p. 6-7 (Arguing that once benefits under § 207-a are awarded, they can only be terminated if there is a hearing on the matter and, in the absence of such a hearing, the benefits must continue to be paid until the injury for which they were initially awarded ceases.). Second, they assert that "[a] firefighter continues to receive his full wages pursuant to General Municipal Law § 207-a even if he returns only to a light duty position, or if he performs no work." Id.  From these legal propositions, Plaintiffs argue that because Vicks was awarded Section 207-a benefits in 1996, and because a Section 207-a revocation hearing did not take place until 2003, the wages paid to Vicks in 2000 necessarily were non-taxable Section 207-a benefits.  The Court disagrees with Plaintiffs' argument because neither legal proposition is accurate.

New York General Municipal Law § 207-a provides special benefits to firefighters who are injured or taken ill in the course of their duties. N.Y. Gen. Mun. L. § 207-a(1).  It is "a remedial statute enacted for the benefit of firemen and should be liberally construed in their favor." Pease v. Colucci, 59 A.D.2d 233, 235 (4th Dept. 1977).  The statute provides, in relevant part:

> Any paid fireman. . . of an organization, fire company, or fire department. . . who is injured in the performance of his duties. . . shall be paid by the municipality. . . by which he is employed, the full amount of his regular salary

11

or wages until his disability arising therefrom has ceased. . . .

The New York courts have held that once a fireman has been injured and it has been determined that he qualifies for § 207-a benefits, he is entitled to that compensation "as long as he has not recovered from his injury, even if such remains through the rest of his life." Pease, 59 A.D.2d at 235 (quoting Matter of Birmingham v. Mirrington, 284 A.D. 721, 726 (4th Dept. 1954)). The New York Court of Appeals has also stated that "the right of a disabled firefighter to receive [§ 207-a] disability payments is a property interest giving rise to procedural due process protection, under the Fourteenth Amendment, before those payments are terminated." Uniformed Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v. City of Cohoes, 94 N.Y.2d 686, 691 (2000). However, neither the statute nor the cases cited by Plaintiffs stand for the proposition that Section 207-a benefits can never be terminated absent a due process hearing, or that a firefighter is paid Section 207-a benefits while performing light duty assignments.

Section 207-a provides that during a firefighter's absence from work after being awarded Section 207-a benefits, he must make himself available for examinations by the employer's physicians for purposes of determining whether the firefighter "has recovered and is physically able to perform his regular duties in the company or department." N.Y. Gen. Mun. L. § 207-a(1). Any firefighter "who refuses to permit medical inspections as herein authorized . . . shall be deemed to have waived his rights under this section in respect to . . . salary or wages payable after such refusal." Id. Thus, a firefighter could lose Section 207-a benefits simply by refusing to submit to a medical examination requested by the employer.

Further, after a Section 207-a(1) examination, the employer may order the

12

firefighter to return to work. See Uniformed Firefighters of Cohoes, 94 N.Y.2d at 692 ("While certainly disabled firefighters receiving section 207-a benefits have an important private interest in continuing to receive them, they are protected in the first instance in that they cannot be ordered back to duty before the public employer's physician has found them capable of performing light duty.")(citing N.Y. Gen. Mun. L. § 207-a(3)).  This includes an order to return to perform light duty assignments. See Id. at 690 ("In the fall of 1997, six members of the City of Cohoes Fire Department, who were receiving disability payments under General Municipal Law § 207-a, were examined by the City's physician for the purpose of evaluating their physical ability to return to full duty or to perform light duty assignments."); Ring v. Langdon, 69 A.D. 2d 998, 999 (4th Dept. 1977)(Interpreting the term "regular duties" as used in Section 207-a(1) to include light duties.).  A due process hearing is not required when such a return to work order is given *unless* the firefighter presents evidence from his own physician of the firefighter's continued total disability. See Uniformed Firefighters of Cohoes, 94 N.Y.2d at 692.[8]

If a firefighter does not present evidence of his continued total disability after the employer's medical examiner determines the firefighter is capable of light duty work (and,

---

[8] The Court of Appeals held in Uniformed Firefighters of Cohoes:

> [A]lthough an administrative hearing may ultimately be required before section 207-a payments are terminated, recipients are not entitled to a hearing-- as claimed by appellants here--prior to the issuance of a report for light duty order. Indeed, an order to report for duty made, as here, only after a medical determination of capability (see, General Municipal Law § 207-a [1], [3]) does not trigger a hearing unless a firefighter on section 207-a status has brought that determination into issue by the submission of a report by a personal physician expressing a contrary opinion. Once evidence of continued total disability has been submitted, we agree with the Appellate Division that the order to report for duty may not be enforced, or benefits terminated, pending resolution of an administrative hearing, which itself is subject to review under CPLR article 78.

94 N.Y.2d at 692 (case citations omitted).

therefore, is not entitled to a due process hearing), and if the firefighter is not otherwise entitled to retirement benefits, Section 207-a benefits my be discontinued if the firefighter refuses to perform light duty assignments that are offered. See N.Y. Gen. Mun. L. § 207-a(3).[9] Still further, Section 207-a(2) provides that Section 207-a benefits cease when a firefighter is granted certain retirement benefits, and Section 207-a(5) provides that a firefighter forfeits Section 207-a benefits when he engages in any outside employment. N.Y. Gen. Mun. L. § 207-a(5).

Finally, Plaintiffs have provided no authority for the proposition that a firefighter could not bargain away his benefits without a due process hearing, as Vicks appears to have done in both 1998 and 2003. Indeed, one of the cases Plaintiffs rely upon - Pease v. Colucci - provides that "once [Section 207-a benefits are] vested," they may not be divested "by other than [the firefighter's] own act." Pease, 59 A.D. 2d 236 (emphasis added). When viewing the record in the light most favorable to Defendant, it is possible for a fact finder to conclude that, by entering the 1998 agreement and by failing to thereafter timely retire, Vicks terminated his Section 207-a benefits by his own act.

Further, Plaintiffs have failed to provide support for their proposition that, once awarded, Section 207-a benefits continue unabated even if the firefighter returns to work

---

[9] Section 207-a(3) provides in pertinent part:

> If [ ] a fireman is not eligible for or is not granted [an] accidental disability retirement allowance or retirement for disability incurred in performance of duty allowance or similar accidental disability pension and is nevertheless, in the opinion of [the City's] health authorities or physician, unable to perform his regular duties as a result of such injury or sickness but is able, in their opinion, to perform specified types of light duty, payment of the full amount of regular salary or wages, as provided by subdivision one of this section, shall be discontinued with respect to such fireman if he shall refuse to perform such light duty if the same is available and offered to him . . . .

N.Y. Gen. Mun. L. § 207-a(3).

in a light duty capacity. This position appears wholly anomalous to Section 207-a's scheme.  It would be illogical for the New York State Legislature to include provisions in the statute so an employer could re-examine an injured firefighter to see if he capable of returning to work and to terminate benefits if the firefighter fails to submit to the examination or to accept light duty work he is capable of performing, but also require employers to pay Section 207-a benefits to firefighters who do return to light duty work. In addition, case law indicates that once an injured firefighter returns to work, his benefits are no longer paid under Section 207-a but rather are paid as regular wages and salary. See Poughkeepsie Prof. Firefighters Ass'n v. N.Y. State Pub. Empl. Rel. Bd., 6 N.Y.3d 514, 520 (N.Y. 2006);[10]  Theroux v. Reilly, 1 N.Y.3d 232, 239 (N.Y. 2003)(Under N.Y. Gen. Munc. L. § 207-c, a statute analogous to Section 207-a for police officers injured in the line of work, payments "stop if the employee either performs, or refuses to perform, light-duty work.").   Absent authority to the contrary, the Court concludes that upon a firefighter's return to work for light duty, his Section 207-a benefits cease and would not need to be paid unless a new application is made, and granted, for the benefits.

Viewing the facts in the light most favorable to Defendant, there are numerous factual issues which prevent the Court from concluding that, as a matter of law, Vicks was

---

[10] In Poughkeepsie Prof. Firefighters Ass'n, the New York Court of Appeals stated in *dicta*:

Section 207-a of the General Municipal Law mandates payment of the full amount of regular salary or wages to a paid firefighter "who is injured in the performance of his duties" or taken ill "as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment" (General Municipal Law § 207-a [1] ).  These payments continue until the disability ceases, or the disabled firefighter is granted a disability retirement. Payments stop if the firefighter either performs, or refuses to perform, light-duty work.

6 N.Y.3d at 520 (emphasis added)..

15

paid Section 207-a benefits in 2000.  Foremost among these is the precatory language in the 2003 Global Settlement Contract indicating that Vicks's Section 207-a benefits ended in 1999, that he later applied for Section 207-a benefits, but that application was denied.  Further, Vicks's inclusion in the City of Binghamton Fire Department's Attendance Book of for all of 2000, albeit on sick leave, is some evidence from which a fact finder could conclude that any benefits paid to Vicks by the City of Binghamton in 2000 were in the nature of taxable employment benefits - not Section 207-a benefits.

Still further, the fact that the City of Binghamton withheld employment taxes in 2000, and that the Vicks twice filed a federal income tax return in which they claimed the compensation from the City in 2000 was taxable income, provides some indication that, at the time, the Vicks and the City of Binghamton regarded Vicks's 2000 compensation as taxable income.  The fact that the New York Workers' Compensation Board later determined that Vicks's inability to work in 2000 was causally related to his 1995 line-of-work injury has no bearing on the City's apparent determination that Vicks was not disabled in 2000 from performing his regular duties in accordance with Section 207-a.  See Lewis v. City of Gloversville, 246 A.D.2d 804, 805-06 (3rd Dept. 1998)("[T]he determination of the Worker' Compensation Board does not determine that plaintiff has a continuing disability or current physical inability to perform his duties" within the meaning of Section 207-a.).

The Court concludes that, on the present record, Plaintiffs have not established that they are entitled to judgment as a matter of law.  Accordingly, Plaintiffs' motion for summary judgment is **DENIED**.

16

### c. Defendant's Motion

Legal and factual issues prevent Defendant from succeeding on its motion for summary judgment. From a factual perspective, the issue remains that Vicks has attested that he was paid Section 207-a benefits in 2000. Given the truncated record presented here, it may well be that he was awarded Section 207-a benefits after 1999 and that the City of Binghamton sought a hearing in 2003 to terminate those benefits. While this attestation appears to fly in the face of the evidence submitted by Defendant indicating that Vicks's Section 207-a benefits ceased in 1999, Vicks's statement is enough to withstand summary judgment on this issue given the limited record presented.

Further, from both a legal and factual perspective, the question remains whether the 2003 Global Settlement Contract was intended to, and somehow did, reclassify the 2000 payments to Vicks from the City of Binghamton as non-taxable Section 207-a benefits. See e.g. Ebert v. United States, 66 Fed. Cl. 287, 291-292 (Ct. of Fed. Cl. 2005)(discussing circumstances where taxable payments may be retroactively reclassified to render them nontaxable). Because the parties have not addressed this issue, the Court renders no opinion on it. Nevertheless, assuming *arguendo* that such a retroactive reclassification could be accomplished, and because the terms of the Global Settlement Contract, read in the light most favorable to Plaintiffs, could be interpreted as an attempt at such reclassification, Defendant's motion for summary judgment is **DENIED**.

### V. CONCLUSION

For the reasons stated above, Defendant's motion, and Plaintiffs' cross-motion, for summary judgment are **DENIED**.

**IT IS SO ORDERED**

Dated: October 24, 2006

Thomas J. McAvoy
Senior, U.S. District Judge